1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8    TRUSTEES OF THE                          2:12-CV-225 JCM (VCF)
     CONSTRUCTION INDUSTRY AND
9    LABORERS HEALTH AND
     WELFARE TRUST, et al.,
10
11              Plaintiff(s),

12   v.

13   SHERYL ARCHIE, et al.,

14              Defendant(s).

15

16                              **ORDER**

17         Presently before the court is plaintiffs' motion for summary judgment.   (Doc. # 67).

18   Defendants have filed a response (doc. # 72) and plaintiffs have filed a reply (doc. # 75).

19         Also before the court is defendants' motion for summary judgment.   (Doc. # 70).   Plaintiffs

20   have filed a response (doc. # 73) and defendants have filed a reply (doc. # 76).

21   **I.     Background**

22         This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"),

23   29 U.S.C. § 1001-1500.

24         Plaintiffs claim to be fiduciaries for the purposes of ERISA.   Plaintiffs collect, or covered

25   employers are required to remit, employee benefit trust funds that provide pension, health and

26   welfare, vacation and training benefits to certain covered employees.

27         According to plaintiffs, defendants were the officers, directors and/or owners of a corporation

28

**James C. Mahan**
**U.S. District Judge**

named Floppy Mop. Floppy Mop and the Laborers International Union of North America, Local no. 872 signed a collective bargaining agreement ("CBA"). The CBA required Floppy Mop to submit monthly remittance reports and to make timely contributions based on those reports to plaintiffs on behalf of each employee who performed work covered by the CBA.

In a prior lawsuit in this district, *Trustees of the Construction Industry and Laborers Health and Welfare Trust et al v. Floppy Mop Inc.*, case number 2:10-cv-01603-KJD-GWF, plaintiffs obtained a judgment against Floppy Mop in the amount of $535,158, based on its failure to make required contributions. Plaintiffs have now filed the instant lawsuit against Sheryl Archie and James McKinney, whom plaintiffs claim are liable for Floppy Mop's outstanding judgment by virtue of their ownership and control of Floppy Mop.

The instant complaint contains two claims for fiduciary liability, one against Archie and one against McKinney. Both parties have filed cross motions seeking summary judgment in their favor.

**II.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

James C. Mahan
U.S. District Judge

- 2 -

1   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

2   make a showing sufficient to establish an element essential to that party's case on which that party

3   will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party

4   fails to meet its initial burden, summary judgment must be denied and the court need not consider

5   the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

6       If the moving party satisfies its initial burden, the burden then shifts to the opposing party

7   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

8   *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

9   party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

11  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

12  Cir. 1987).

13      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

14  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

15  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

16  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

17  for trial. *See Celotex Corp.*, 477 U.S. at 324.

18      At summary judgment, a court's function is not to weigh the evidence and determine the

19  truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

20  477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

21  inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

22  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

23  249–50.

24  **III.   Discussion**

25      In *Trustees of the Construction Industry and Laborers Health and Welfare Trust et al v.*

26  *Floppy Mop Inc.*, case number 2:10-cv-01603-KJD-GWF, plaintiffs obtained a judgment against

27  Floppy Mop in the amount of $535,158. The only question before this court is whether Archie and

28

James C. Mahan
U.S. District Judge

1    McKinney are personally liable for the judgment against Floppy Mop.

2         As a preliminary matter, the court acknowledges that defendants are proceeding *pro se*.

3    Documents filed *pro se* are held to less stringent standards. *Erickson v. Pardus*, 551 U.S.

4    89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

5    inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

6    lawyers.") (internal quotations and citations omitted).  However, "pro se litigants in the ordinary civil

7    case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*,

8    790 F.2d 1362, 1364 (9th Cir. 1986).

9         (A) Fiduciary Liability

10        Defendants spend the majority of their opposition arguing only that the judgment obtained

11   against Floppy Mop was somehow fraudulent and is therefore invalid.  Defendants provide no

12   evidence to support this assertion.  In the prior matter, Floppy Mop failed to initially respond or

13   otherwise participate.  As a result, default judgment was entered against Floppy Mop in the amount

14   of $535,158.  *See Trustees of the Construction Industry and Laborers Health and Welfare Trust et*

15   *al v. Floppy Mop Inc.*, case number 2:10-cv-01603-KJD-GWF.  It was not until nearly three years

16   later that Archie and McKinney, purporting to act on behalf of Floppy Mop, filed a motion to set

17   aside the default judgment.  The court denied that motion without prejudice because a corporation

18   may not be represented *pro se*, the motion was excessively tardy, and the court doubted that Archie

19   and McKinney had standing to bring the motion.  Floppy Mop did not obtain counsel and did not

20   participate further in that lawsuit.

21        Archie and McKinney now make conclusory assertions in the instant suit that Floppy Mop

22   was not a party to the subject CBA and related agreements.  Defendants' arguments are misplaced.

23   It has already been established that Floppy Mop is liable to plaintiffs for the unpaid contributions.[1]

24   The inquiry here is limited to whether or not Archie and McKinney can be held personally liable for

25   _____

26        [1]  Defendants' claim that Floppy Mop is distinct from Floppy Mop & D-Clutter, and that the former was not
     bound by the CBA is itself suspect.  The timeline of the two companies' incorporations and the submission of remittances
27   seem to contradict this claim.  Moreover, the CBA with local 702 incorporates by reference the local 872's master labor
     agreement.  Thus, Floppy Mop need not sign the 872 agreement in order to be bound by it.  In any event, this lawsuit
28   is not the proper vehicle to in which to attack the default judgment against Floppy Mop.

James C. Mahan
U.S. District Judge                                    - 4 -

1   the default.  On that point, defendants do not proffer evidence or otherwise argue that they did not

2   exercise discretion or control over the disbursement of those contributions.

3          Under ERISA, "a person is a fiduciary of a plan to the extent he exercises any discretionary

4   authority or discretionary control respecting management of such plan or exercises any authority or

5   control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A)(I).  A

6   fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the

7   participants and beneficiaries. . .for the exclusive purpose of (I) providing benefits to participants

8   and their beneficiaries. . ."  29 U.S.C. § 1104(a)(1)(A)(I).  A fiduciary who breaches his or her

9   fiduciary responsibilities, obligations, or duties is "personally liable to make good to such plan any

10  losses to the plan resulting from such breach. .."  29 U.S.C. § 1109(a).

11         Defendants argue that the unpaid contributions owed to the plaintiffs on behalf of Floppy

12  Mop's covered employees are not considered "assets" under ERISA.  This is incorrect.  It is true, as

13  a general rule, that "[u]ntil the employer pays the employer contributions over to the plan, the

14  contributions do not become plan assets over which fiduciaries of the plan have a fiduciary

15  obligation. . ."  *Cline v. The Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir.

16  2000).  "Nonetheless, although the Ninth Circuit has not addressed the issue, other circuits and

17  district courts in the Ninth Circuit following the *Cline* rule have recognized an exception where the

18  agreement governing the plan identifies unpaid employer contributions as plan assets."  *Trustees of*

19  *Electrical Workers Health and Welfare Trust v. Campbell*,  No. 2:07-cv-00724, 2010 WL 582553,

20  *3 (D. Nev. Feb. 11, 2010)(citations omitted).  "Where documents of a plan describe its assets as

21  including contributions that are required to be paid, unpaid employer contributions are considered

22  plan assets."  *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution*

23  *Pension Trust for S. Nevada v. Granite Works, Inc.*, 2:10-cv-00767-HDM-PAL, 2011 WL 3159099,

24  *3 (D. Nev. July 26, 2011).  "Language deemed sufficient has included: (1) sums 'due and owing';

25  (2) sums that 'shall be paid' or are 'required to be made'; or (3) sums that 'become Trust assets on

26  the Due Date.'"  *Id.* (citations omitted).  By contrast, "[u]npaid employer contributions have not been

27  considered plan assets where plan documents describe assets as including simply 'contributions,'

28

James C. Mahan
U.S. District Judge

- 5 -

1    without more." *Id.* (citations omitted).

2        Here, the trust fund's collection policy provides that "all money owed to the Trusts, which

3    money (whether paid, unpaid, segregated or otherwise traceable, or not) *becomes a Trust asset on*

4    *the Due Date*." (*Laborers Joint Trust Funds Amended and Restated Collection Policy and*

5    *Procedures*, doc. # 67, ex. 8, p. 1, section II(B))(emphasis added). The collection policy further

6    states that "[c]ontributions must be received by the 20th of the month. . .or such contributions are

7    delinquent and the employer shall immediately be liable. . ." (*Id.* at p. 2, section III(B)). In addition,

8    the trust agreements state:

9            Contributions paid, *and due but not yet paid, are Trust Fund Assets*,
             without regard to whether the Employer has segregated or designated
10           such funds as Contributions, as of the date the Employees performed
             the work for which such Contributions are due. In addition, in the
11           event Contributions *are due but not yet paid, and are therefore Trust*
             *Fund assets hereunder*, but the Employer does not possess such
12           funds, any accounts receivable or future receipts of any kind that are
             owed or paid to such Employer shall also be deemed Trust Fund
13           assets to the extent of all amount owed to the Trust Funds by such
             Employer. For purposes of this definition, "Contributions" also
14           includes any ancillary amounts due in relation to any owed
             Contribution, *such as attorneys' fees, liquidated damages, audit fees,*
15           *or the like*.

16   (*Trust Agreement for local 872 and employers*, doc. #67, ex. 2, amend. 4, LAB000035) (emphasis

17   added).

18       Under the relevant case law, the language contained in the instant agreements and policies

19   makes sufficiently clear that due but unpaid contributions qualify as "trust fund assets." *See, e.g.,*

20   *Campbell*, no. 2:07-cv-00724, 2010 WL 582553 (D. Nev. Feb. 11, 2010).

21       Because the unpaid contributions are trust assets in this case, plaintiffs must now demonstrate

22   that these defendants exercised authority or control over those assets in order to hold them personally

23   liable. *Id.* at *2 ("Defendants are liable as fiduciaries if (1) the unpaid contributions are trust assets,

24   and (2) Defendants exercised authority or control over those assets.")(citations omitted).

25       An individual's status as an officer alone does not establish a defendant as a fiduciary

26   under ERISA. *Id.* at *4 (*citing Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 ("[A] person's actions,

27   not the official designation of his role, determine whether he enjoys a fiduciary status."). Rather, a

28

court "must look to Defendants' acts and responsibilities to determine whether they are fiduciaries." *Id.* (*citing Acosta,* 950 F.2d at 618). Plaintiffs have provided ample evidence, taken from the defendants' own depositions, that demonstrate they did exercise control and authority over Floppy Mop's operations and financials, including management of plan assets. In particular, plaintiffs point to the following deposition excerpts and supporting documents:

- Archie and McKinney formed and owned Floppy Mop. (Doc. # 67, ex. 11 (Archie deposition excerpts) at 61:7-20; ex. 12 (McKinney deposition excerpts) 37:25-38:4).

- No other individuals were ever owners of Floppy Mop. (*Id.*, ex. 11 at 62:12-16).

- Archie and McKinney were the only officers of Floppy Mop. (*Id.*, ex. 10 (Nevada Secretary of State business entity information for Floppy Mop, Inc.); ex. 11 at 66:14-24; 67:9-14; ex. 12 at 69:5-15)).

- Archie and McKinney ran the day-to-day operations of Floppy Mop. (*Id.*, ex. 11 at 67:7-20; ex. 12 at 46:11-20).

- Archie and McKinney were responsible for bidding and running jobs for Floppy Mop and no other individual shared that responsibility. (*Id.*, ex. 11 at 71:2-73-6; ex. 12 at 43:13-45:16, 46:7-10).

- Archie and McKinney both could issue checks from Floppy Mop and no other individual had authority to do so for Floppy Mop. (*Id.*, ex. 11 at 78:6-14; ex. 12 at 47:4-16).

- Archie and McKinney both had the responsibility and authority to pay Floppy Mop's bills. (*Id.*, ex. 11 at 80:8-18; ex. 12 at 150:19-25).

- Archie and McKinney were both responsible for employment decisions including hiring and firing workers and for paying workers, and no other individuals had such responsibilities. (*Id.*, ex. 12 at 51:7-21, 75:25-77:3).

•     Archie and McKinney had the sole responsibility to prepare and sign the monthly remittance reports to the trust funds that reported the amount of work performed by covered employees and the amount of contributions owed and to pay the contributions owed. (*Id.*, ex. 11 at 93:5-19,96:2-97:6; ex. 12 at 65:3-66:4).

•     McKinney signed remittance reports to the trust funds indicating that he was an owner and a secretary of Floppy Mop. (*Id.*, ex. 13 (Remittance Report for November 2008); ex. 14 (Remittance Report for November 2009)).

Defendants have not put forth any evidence contradicting these facts. They have instead dedicated their opposition, in large part, to disputing Floppy Mop was ever a party to the CBA. Again, Floppy Mop's liability has already been established in the prior matter. By failing to offer any evidence disputing their authority and control over the plan assets, defendants have failed to satisfy their burden in opposing summary judgment. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data).

The Ninth Circuit has held that "[t]he words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp. v. Gen. Am. Life Ins.*, 107 F.3d 1415, 1421 (9th Cir. 1997). The evidence offered by plaintiffs sufficiently demonstrate that Archie and McKinney controlled the payment of the contributions. As a result, they are considered fiduciaries under ERISA. Because there is no genuine issue of material fact remaining, summary judgment is entered in favor of plaintiffs.

**IV.  Conclusion**

The court finds that Archie and McKinney exercised discretion and/or authority over the contributions Floppy Mop was required to make to the trusts. As such, they are fiduciaries as

James C. Mahan
U.S. District Judge

defined by ERISA.  By virtue of their failure to make the contributions as required by the CBA, Archie and McKinney are both individually and personally liable for the judgment against Floppy Mop.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for summary judgment (doc. # 67) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (doc. # 70) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiffs shall submit a proposed judgment.

DATED March 3, 2014.

_____
**UNITED STATES DISTRICT JUDGE**